# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**TERRY KELLY (#84380)**                              **CIVIL ACTION**

**VERSUS**

**JAMES LEBLANC, ET AL.**                              **NO. 13-0798-JJB-EWD**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 22, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**TERRY KELLY (#84380)**                                      **CIVIL ACTION**

**VERSUS**

**JAMES LEBLANC, ET AL.**                                      **NO. 13-0798-JJB-EWD**

## <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

Before the court is the defendants' Motion for Summary Judgment (R. Doc. 38).   This motion is not opposed.

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., against Secretary James LeBlanc, former Warden Burl Cain and Dr. Jason Collins.   In his Complaint, as amended, the plaintiff alleges that the defendants have violated his constitutional and statutory rights (1) by subjecting him to unconstitutional conditions of confinement in violation of the Eighth Amendment, (2) by subjecting him to discrimination in violation of the Fourteenth Amendment, and (3) by failing to provide adequate accommodation for his medical disability under the ADA.   The plaintiff prays for compensatory and punitive damages.   Pursuant to a prior Magistrate Judge's Report in this case (R. Doc. 31), approved by the District Judge on November 5, 2014 (R. Doc. 33), the Court has granted in part a Motion to Dismiss filed by the defendants and has dismissed both the plaintiff's claims of discrimination and his claims arising under the ADA.   As a result, the sole claim remaining before the Court is the plaintiff's claim that the defendants have violated his Eighth Amendment constitutional rights by subjecting him to unconstitutional conditions of

confinement.

The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, certified copies of the plaintiff's Location Sheet and Conduct Record, a copy of the Disciplinary Rules and Procedures for Adult Offenders (the prison rulebook), and the affidavit of Dr. Randy Lavespere.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.   Rule 56, Federal Rules of Civil Procedure.   *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).   A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.   *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.   If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.   *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248.   This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.   *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).   Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.   Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a

judgment in favor of the non-moving party.   *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.   *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

As pertinent to the claim remaining before the Court, the plaintiff alleges in his Complaint, as amended, that he has been completely blind for 16 years.   The plaintiff complains that notwithstanding this condition, he has been classified to confinement in a two-person cell and that this confinement has subjected him to unspecified torturous conditions of confinement.   The plaintiff further alleges that there are no handrails in his cell, no handrails in the shower cell located on his cell tier, and that the cane that he is allowed to use while outside his cell is taken from him while he is confined in the cell.   The plaintiff alleges that he has suffered bruises and falls during his period of confinement, and he cites as a single example an incident that allegedly occurred in May 2013, when he suffered a fall in the shower and sustained a bruise to his hip.   The plaintiff alleges in his Complaint that he was not provided with any relief following that incident notwithstanding that unidentified security officers observed his fall.

Finally, the plaintiff alleges that he has requested a transfer to either a designated medical dormitory – specifically utilized to accommodate the needs of disabled inmates – or to the medical ward at the R.E. Barrow Treatment Center at LSP, but those requests have been denied.   Further, the plaintiff alleges that defendants former Warden Cain and Secretary LeBlanc have failed to personally review or investigate his administrative grievances wherein he has complained about the alleged unconstitutional conditions.

In response to the plaintiff's allegations, the defendants asserts that they are entitled to qualified immunity in connection with the plaintiff's claims.  Specifically, the defendants contend that the plaintiff has failed to present evidence sufficient to show the existence of a genuine issue of disputed fact relative to their violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.  *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012).   The Court considers whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights, and whether the rights allegedly violated were clearly established at the time the violation occurred.[1]   This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.   *Saucier v. Katz*, 533 U.S. 194, 201 (2001)   The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.   *Id*. at 202.   The assertion of the qualified immunity defense alters the summary judgment burden of proof.   *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).   Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct."   *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.

---

[1]   *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)(holding protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001), should not be "regarded as an inflexible requirement," but may be considered if the court wishes.).   Courts now have discretion to decide which of the two prongs of the analysis to address first.

Undertaking the qualified immunity analysis with respect to the plaintiff's claims, the Court finds that the defendants' motion for summary judgment should be granted. Specifically, the Court finds that the plaintiff has failed to present evidence sufficient to support a finding that the defendants have been deliberately indifferent to his health or safety by subjecting him to unconstitutional conditions of confinement.

Initially, the Court finds that the plaintiff's claims asserted against the defendants in their official capacities are subject to dismissal because 42 U.S.C. § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in an official capacity, specifically because such officials are not seen to be "persons" within the meaning of § 1983.[2]  *See Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989); see also *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, the plaintiff's claim asserted against the defendants in their official capacities for monetary damages is subject to dismissal. In contrast, the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities remains

---

[2] The initial Magistrate Judge's Report in this case similarly concluded that the plaintiff's claims asserted against the defendants in their official capacities should be dismissed. *See* R. Doc. 33 at p. 4-5. That conclusion, however, was not explicitly repeated in the Magistrate Judge's concluding Recommendation. As a result, when the District Judge approved and adopted the Magistrate Judge's Report and Recommendation, the Ruling did not address the plaintiff's official capacity claims. Accordingly, the Court again recommends that the plaintiff's claims asserted against the defendants in their official capacities be dismissed for the reasons stated in the earlier Magistrate Judge's Report and Recommendation.

theoretically viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id.* at 29.

Turning to the plaintiff's claim asserted against the defendants in their individual capacities, the Court next concludes that the plaintiff has failed to sufficiently allege the involvement of defendants LeBlanc and Cain in the events complained of herein. In this regard, in order for a prison official to be found liable under § 1983, the official must be shown to have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be shown to be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

Applying the foregoing standard in connection with the plaintiff's claims, the Court

concludes that the plaintiff has failed to sufficiently allege the involvement of defendants Cain and LeBlanc in any conduct that may be characterized as a violation of the plaintiff's constitutional rights.   First, as former Head Warden of LSP and as Secretary of the Louisiana Department of Corrections, respectively, these defendants are clearly supervisory employees.   Plaintiff has not alleged these individuals have personal responsibility for determining the plaintiff's housing assignments or determining the accommodations appropriate for his condition.   Further, these defendants are neither physicians nor qualified health care providers, and they are not generally tasked with evaluating the discretion exercised by competent health care providers.   In fact, in an Amended Complaint, that was filed in response to an Order directing the plaintiff to "state specific facts supporting his claim(s) against each of the defendants," *see* R. Docs. 20 and 21, the plaintiff asserted only that the defendants, in their official capacities, have "allowed their employees to provide [the plaintiff] with inappropriate accomadations [sic]."   *See* R. Doc. 21 at p. 1.   This is an allegation of purely indirect supervisory authority and does not meet the requirement that the defendants be directly and personally involved in the constitutional deprivations alleged.   As such, the plaintiff has failed to adequately support his claim asserted against these defendants.

In addition to the foregoing, the plaintiff also alleges in his Amended Complaint that "had" defendants Cain and LeBlanc personally reviewed the plaintiff's administrative grievance, they "would have seen the disregard for health and safety" exhibited by LSP personnel and "would also see the misconduct of ... employees."   *See id.* at p. 3.   This speculative assertion, similarly, does not sufficiently suggest the personal involvement and awareness of these defendants in the events alleged.   Moreover, to the extent that this assertion amounts to a claim that the plaintiff brought his complaints to the attention of defendants Cain and LeBlanc through the filing of an

administrative grievance and that the defendants did not investigate or remedy his concerns, the law is clear that a mere failure to investigate or respond to an inmate's complaints or administrative grievances is not a basis for liability under § 1983.   *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005).   To the contrary, the plaintiff has no constitutional right to an investigation or to a favorable response to his written complaints or grievances, and there is no due process right inherent in such a claim.   *Id*.   Accordingly, the Court finds that the plaintiff has failed to factually allege that defendants Cain and LeBlanc have had any direct or personal involvement in his housing assignments or in determining the appropriate accommodation for his condition.   In the absence of any allegation suggesting such direct involvement, these supervisory defendants are entitled to judgment as a matter of law.

Turning to the plaintiff's claim asserted against the remaining defendant, Dr. Jason Collins, the plaintiff's allegations fare no better.   Relative to this defendant, the plaintiff alleges only that Dr. Collins made the determination not to house the plaintiff in the Ash Dormitory at LSP – which is designated for disabled inmates – or in the R.E. Barrow Treatment Center.   *See* R. Doc. 21 at p. 2 ("[H]ad Mr. J. Collins admitted Mr. Kelly to the R.E. Barrow Treatment Center ..., he would not be a defendant").   The plaintiff complains that, as a result of Dr. Collins' determination, the plaintiff has been subjected to unspecified "torture" in the form of living in a cell with a co-inmate, of living in a housing unit that is not equipped with hand rails in the cells or shower units, and is deprived of his cane when he is within the cell.   These conditions, however, do not rise to the level of a constitutional violation.

The plaintiff's allegations implicate his right, under the Eighth Amendment, to be free from cruel and unusual punishment in the form of unconstitutional conditions of confinement.   The

8

prohibition against cruel and unusual punishment, however, requires only that prisoners be afforded humane conditions of confinement and that they receive adequate food, shelter, clothing and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). *See also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (recognizing that "[t]he Constitution does not mandate comfortable prisons ... but neither does it permit inhumane ones"). A constitutional violation occurs only when two requirements are met. First, there is the objective requirement that the condition must be "so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need." *Harper v. Showers, supra,* 174 F.3d at 720, *citing Woods v. Edwards,* 51 F.3d 577, 581 (5th Cir. 1995) (quotation omitted). Second, under a subjective standard, the Court must determine that the prison official responsible for the deprivation had a "sufficiently culpable state of mind that is, the official must have been deliberately indifferent to the prisoner's health and safety." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013), citing *Palmer v. Johnson*, 193 F.3d 346, 351-52 (5th Cir. 2008); *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Mere negligence is not a basis for liability under § 1983. *Hernandez ex rel. Hernandez v. Texas Dept. of Protective and Regulatory Services*, 380 F.3d 872, 882-83 (5th Cir. 2004); *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000). Accordingly, in order to find liability on the part of a prison official, the fact-finder must determine both (1) that the prison official was personally aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) that the official in fact drew the inference. *See Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003), *quoting Farmer v. Brennan, supra,* 511 U.S. at 837. Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually

9

enforcing effect that produces the deprivation of a single, identifiable human need. *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004), *citing Wilson v. Seiter*, 501 U.S. 294 (1991). Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 679 (M.D. La. 2007), *quoting Wilson v. Seiter, supra,* 501 U.S. at 305. The deliberate indifference standard is appropriately applied to the plaintiff's allegations regarding the conditions of his confinement. *Gates v. Cook, supra*, 376 F.3d at 332-33, *citing Farmer v. Brennan, supra,* 511 U.S. at 832-34.

In addition to the foregoing, the law is clear that the classification of prisoners is a matter left to the sound discretion of prison officials and inmates have no right to a particular classification under state law. *Wilkerson v. Stalder*, 329 F.3d 431, 435-36 (5th Cir. 2003), *quoting McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990); *Harper v. Showers, supra*, 174 F.3d at 719. Prison officials are afforded broad administrative and discretionary authority over the institutions they manage, and lawfully incarcerated persons retain only a narrow range of protected liberty interests. *Mitchell v. Sheriff Dept., Lubbock County, Tex*., 995 F.2d 60, 63 (5th Cir. 1993); *Hewitt v. Helms*, 459 U.S. 460, 467 (1983). So long as the conditions and degree of confinement are within the sentence imposed on an inmate and do not otherwise violate the constitution, the due process clause does not itself subject a prison official's treatment of an inmate to judicial oversight. *See Shaw v. Murphy*, 532 U.S. 223, 228 (2001). Where the decision to keep an inmate is reasonably related to legitimate security objectives and was not an exaggerated response to security considerations, there is no denial of due process. *McCord v. Maggio*, *supra*, 910 F.2d at 1251.

Applying the foregoing principles, it does not appear that the defendants have exhibited

deliberate indifference to the plaintiff's health and safety in classifying him as they have in this case. Although the plaintiff complains regarding the decision not to house him in the Ash Dormitory or in the Treatment Center, the defendants have provided an unrefuted affidavit executed by the LSP Medical Director, Dr. Randy Lavespere, attesting that "inmates who cannot see are housed in numerous locations throughout LSP spread across several different camps, [and] [t]here is not a designated location to house inmates who cannot see, and blind inmates are not automatically assigned to Ash [Dormitory]." *See* R. Doc. 38-3. Dr. Lavespere further attests that while Ash Dormitory is designed to house inmates with special needs, it varies from the cellblocks and other dormitories in only a few ways, notably as to the absence of a raised step upon entering the showers, the existence of handrails and seats in one area of the showers, and the existence of handrails around the toilets. Dr. Lavespere explains, however, that these accommodations are designed more for inmates with strength, balance and mobility concerns who are in wheelchairs or need assistance in raising and lowering themselves from the toilets. As for the R.E. Barrow Treatment Center, Dr. Lavespere notes that inmates who are housed at that location "are typically in need of a higher level of medical care such as hospice [and] [i]nmates who cannot see would not be housed at the Treatment Center unless they were in need of more comprehensive medical care," a condition that is not applicable to the plaintiff. Finally, the defendants have provided a Statement of Undisputed Facts wherein it is noted that the plaintiff suffers with a condition diagnosed as "Impulse Control Disorder," that he has difficulty controlling his emotions, and that he typically reacts aggressively to inmates and prison staff. As a result, prison officials have repeatedly attempted to house him in locations designated for handicapped inmates, but the plaintiff's frequent violation of prison rules, through defiance, aggravated

11

disobedience and aggravated fighting, has prevented his transfer to other locations.

Based on the foregoing, it appears that the decision by prison officials to house the plaintiff in a cell instead of in the Ash Dormitory or the R.E. Barrow Treatment Center is a clear example of the exercise of discretion by prison personnel, based on both medical and security concerns, that is not typically subject to review by the Court and does not, in any event, amount to deliberate indifference to the plaintiff's health or safety.[3]   The defendants have provided unrefuted evidence that the plaintiff's assignment to the Ash Dormitory or the R.E. Barrow Treatment Center is not medically required for his condition.   Further, although the plaintiff alleges that his confinement in a cell with another inmate constitutes "torture," he has not alleged that he has suffered any injury or harm at the hands of other inmates.   The most that he suggests is that other inmates may have differing attitudes toward blind prisoners, and this subjects him to "possible life threatning [sic] conditions."   *See* R. Doc. 1-2 at p. 17.   This is a conclusory assertion, however, and is not supported by the record.   Further, in *Bell v. Wolfish*, 441 U.S. 520, 542 (1979), the United States Supreme Court indicated that there is no constitutional principle requiring "one man, one cell," and the "double celling" of inmates is not a *per se* unconstitutional condition.   *Rhodes v. Chapman*, 452 U.S. 337, 349 (*); *Duncan v. Puckett*, 91 F.3d 137, 1996 WL 400039 (5th Cir. May 27, 1996) (upholding the dismissal, as frivolous, of an inmate's claim of being placed "in a single cell with another inmate"); *Thompson v. Stalder*, 2008 WL 874138, *7 (M.D. La. April 1, 2008) (finding that "the mere fact that an inmate may be double-celled for a period of time does not, as a matter

---

[3] To the extent that the plaintiff complains that prison rules and regulations were not complied with in assigning him to a cell that is not properly equipped for a handicapped inmate, the law is clear that a mere violation of prison rules or regulations by prison officials is not a constitutional violation cognizable in this Court.   *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (citations omitted).

of law, state a claim of constitutional dimension"); *Higgins v. Jefferson Parish Prison*, 1988 WL 24137, \*3 (E.D. La. March 7, 1988) (claim of being housed in a cell with another inmate dismissed as frivolous).    Finally, although the plaintiff complains that he has experienced falls and injuries because of a lack of available handrails, he provides only a single example of an alleged fall in his shower cell in May 2013, and as to that fall, he acknowledges that the resulting injuries were not severe and that he received medical treatment after the incident.    *See* R. Doc. 27 at p. 5.    In short, there is nothing in the record to support a conclusion that any defendant has been deliberately indifferent to the plaintiff's health or safety.[4]

Finally, in addition to the foregoing, the Court notes that the plaintiff has not filed any opposition in response to the defendants' motion for summary judgment.[5]    In the context of a motion for summary judgment, it is well-settled that a plaintiff may not rest upon mere allegations or assertions contained in his Complaint in opposing a properly supported motion.    *Celotex Corp. v. Catrett, supra*, 477 U.S. at 324.    Specifically, Rule 56 requires that, in response to such a motion, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"    *Id*.    Stated another way, in order to meet his burden of

---

[4]  The Court notes that, in the defendants' Statement of Undisputed Facts, they assert that the plaintiff has recently been re-assigned to live in the Ash Dormitory.    *See* R. Doc. 38-2 at p. 2.

[5]  The Court recognizes that the plaintiff is a *pro se* litigant whose pleadings, including a response to a motion for summary judgment, must be construed liberally. *McCrae v. Hankins*, 720 F.2d 863, (5th Cir. 1983), *abrogated on other grounds by Hudson v. Palmer*, 468 U.S. 517, 531–33 (1984), *as recognized in Augustine v. Doe*, 740 F.2d 322, 328 n.10 (5th Cir. 1984). However, as the party with the burden of proof, the plaintiff is not excused from the requirement that he set forth specific facts supporting his claim. *Bookman v. Shubzda*, 945 F.Supp. 999, 1004 (N.D. Tex. 1996), *citing Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *cf. Douglass v. United Services Auto. Ass'n,* 65 F.3d 452, 455 n.4 (5th Cir. 1995). "The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." *Hulsey v. State of Tex*., 929 F.2d 168, 171 (5th Cir. 1991), *quoting Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981). According to the Fifth Circuit, district courts are under no obligation to search the record for evidence to support the non-movant's case, even when the non-movant is a *pro se* litigant. *Jones v. Sheehan, Young, & Culp, P.C.*, *supra*, 82 F.3d at 1338 n.3.

proof, the party opposing a motion for summary judgment "may not sit on its hands, complacently relying" on the pleadings.   *Weyant v. Acceptance Insurance Co.*, 917 F.2d 209, 212 (5th Cir. 1990).   When a party does not file an opposition to a motion for summary judgment, the Court is permitted to consider the facts presented in support of the motion as undisputed and to grant summary judgment if the facts show that the movant is entitled to judgment in his favor.   *See Jegart v. Roman Catholic Church Diocese of Houma - Thibodaux*, 384 Fed. Appx. 398, *2 (5th Cir. 2010).   Further, pursuant to Local Rule 56(b) of this Court, the plaintiff's failure to oppose the defendants' motion for summary judgment allows the Court to conclude that all of the facts contained in the defendants' Statement of Uncontested Material Facts are deemed to be admitted. In the instant case, despite notice and an opportunity to appear, the plaintiff has not come forward with any opposition to the defendants' motion for summary judgment or to the affidavits and documentary evidence produced in support thereof.   Accordingly, there is nothing before the Court which tends to dispute the defendants' assertions regarding the plaintiff's classification and housing assignments as discussed above.   Therefore, based upon the plaintiff's failure in this case to oppose the defendants' motion, failure to designate specific evidence in the record of sufficient caliber and quantity to create a genuine issue for trial, and failure to produce supporting evidence on his own behalf, the Court concludes that the defendants' motion is well-taken and that the defendants are entitled to summary judgment as a matter of law.

## RECOMMENDATION

It is recommended that the defendants' Motion for Summary Judgment (R. Doc. 38) be granted, dismissing the plaintiff's claims asserted against the defendants, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on February 22, 2016.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**